UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PARADISE RIDGE DEFENSE COALITION,<br><br>      Plaintiff,<br><br>    v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS, and DORAL HOFF, in his official capacity as District Engineer for Idaho Transportation Department District 2,<br><br>      Defendants. | Case No. 1:22-cv-00122-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Plaintiff, Paradise Ridge Defense Coalition, has filed this action challenging defendant U.S. Army Corps of Engineers' (the Corps) issuance of a verification letter authorizing the Idaho Transportation Department (ITD) to discharge fill into waters of the United States without a permit. Pending before the Court are the Motion to Dismiss (Dkt. 8) filed by defendant Doral Hoff, who has been sued in his official capacity as District Engineer for ITD District 2; the Motion to Compel Discovery filed by Paradise (Dkt. 17); and the Motion to file a Sur-reply filed by

the Corps (Dkt. 23). For the reasons discussed below, the Court will deny the

Motion to Dismiss, grant the Motion to Compel Discovery, and deny the Motion to

file a Sur-reply.

## STATUTORY FRAMEWORK

The Clean Water Act (CWA) prohibits the discharge of pollutants into

navigable waters unless otherwise authorized under the CWA. 33 U.S.C. §§

1311(a), 1344. "Navigable waters" are defined by the CWA as "the waters of the

United States," and includes certain "wetlands." 33 U.S.C. §§ 1362(7), 328.3(a),

(b).[1]

Section 404 of the CWA prohibits the discharge of "dredged or fill material"

into navigable waters without a permit issued by the Corps. *See* 33 U.S.C. § 1344.

The Corps may issue both individual and general permits. *See id.* at § 1344(a), (e).

General permits may be issued on "a State, regional, or nationwide basis," but only

if the Secretary has determined that the category of activities at issue "are similar

in nature, will cause only minimal adverse environmental effects when performed

separately, and will have only minimal cumulative adverse effect on the

───────────────

[1] The parties use interchangeably the terms "navigable waters," "WOUS," "jurisdictional waters," "jurisdictional wetlands," and "wetlands." There is no dispute that the wetlands at issue in this case are subject to the CWA. Thus, the use of the term "wetlands" in this Order assumes that the wetlands at issue are under the jurisdiction of the CWA.

environment." 33 U.S.C. § 1344(e) (1).

The Corps' Nationwide Permit (NWP) program is "designed to regulate with little, if any, delay or paperwork certain activities having minimal impacts." 33 C.F.R. § 330.l(b). NWPs must, however, meet certain guidelines, known as § 404(b)(1) Guidelines. *See* 33 U.S.C. § 1344(b)(1), (e)(1). The 404(b)(1) Guidelines establish criteria designed to ensure that permits issued by the Corps protect the environment to the greatest extent practicable. *See* 40 C.F.R. §§ 230.1, 230.2. The Corps applies the 404(b)(1) Guidelines for each category of activities at the time it promulgates NWPs. An applicant seeking to proceed under an NWP merely needs to meet the criteria for the applicable NWP; no further action by the Corps is required. 40 C.F.R. § 230.1(b).

Most activities falling within the scope of an NWP are automatically authorized without an individualized inquiry. However, advance notification, known as preconstruction notification, is required in some cases. 33 C.F.R. § 330.1(e). If preconstruction notification is required, the Corps is to verify the applicability of the NWP to the proposed activity. 33 C.F.R. § 330.1(e)(2). If preconstruction notification is not required, the Corps may nevertheless exercise "discretionary authority" to restrict the otherwise automatic application of the NWP program. 33 C.F.R. § 330.1(d). For some NWPs involving discharges into

wetlands, the preconstruction notification must include a wetland delineation. *Id.*

Here, the Project is proceeding under a general NWP permit—NWP 14—which provides advanced approval of any linear highway project that meets the specified criteria, including that the project will not result in an impact on wetlands greater than 0.5 acre at any one site. *See* 82 FR 1860-01. It is this 0.5 acre criteria that is at issue in this case and specifically whether the Project will impact wetlands greater than 0.5 acre at any one site.

## FACTUAL BACKGROUND[2]

The ITD plans to reroute a section of the US-95 highway located south of Moscow, Idaho, through an area known as "Paradise Ridge." The Project—the US-95 Thorn Creek Road to Moscow Rerouting Project—involves the discharging of fill material into jurisdictional waters.

Doral Hoff, in his official capacity as District Engineer of ITD's District 2, signed and submitted an application to the Corps on September 29, 2020, seeking a permit to discharge fill into jurisdictional waters in connection with the Project. In this application, Hoff represented that the Project would not impact more than 0.5

---

[2] For purposes of the pending motion to dismiss, the Court accepts as true the factual allegations of the Complaint (Dkt. 1) and construes the facts in the light most favorable to Paradise. *See Smith v. Pac. Props. and Dev. Corp.*, 358 F.3d 1097, 1099 (9th Cir. 2004).

acres of navigable waters at one or more crossing sites.[3] The application sought

verification from the Corps that the Project could proceed under NWP 14, and that

the Project did not require ITD to apply to the Corps for individual CWA permits.

The Corps approved the application on March 9, 2021, and issued a

verification letter in which the Corps verified the Project could proceed under

NWP 14. In issuing the verification, the Corps made a determination that

discharges of dredged or fill material at Site 1 will result in losses of 0.468 acre of

navigable waters, and thus 0.032 acre less than the 0.50 acre threshold. (AR 1-132,

145-46.)

Paradise brought this action under the CWA and the Administrative

Procedures Act to challenge the Corps' decision to issue the verification. Paradise

alleges that, in determining that the Project will not impact more than 0.5 acre of

navigable waters at one or more crossing sites, the Corps failed to consider

relevant information. Paradise believes this information, if considered, would

demonstrate that the Project will impact more than 0.5 acres at Site 1 and that the

Project is therefore not covered by NWP 14.

_____

[3] Crossing sites are those sites where the proposed new route would cross streams and
wetlands. (Dkt. 1 at 6.)

## MOTION TO DISMISS

Defendant Hoff seeks dismissal from this action. He argues that he is entitled to dismissal because the Complaint (Dkt. 1) does not state any substantive claim against him. The Court disagrees and finds that, although no substantive claim has been brought against Hoff, his joinder is proper under Federal Rule of Civil Procedure 19.

Rule 19 provides, in relevant part:

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

As the Ninth Circuit has explained, a plaintiff's inability to state a direct cause of action against a particular defendant does not prevent the joinder of that defendant under Rule 19. *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 781 (9th Cir. 2005) ("[A] plaintiff's inability to state a direct cause of action against an

absentee does not prevent the absentee's joinder under Rule 19."). Indeed, "a person may be joined as a party for the sole purpose of making it possible to accord complete relief between those who are already parties, even though no present party asserts a grievance against such person." *Beverly Hills Federal Savings and Loan Association v. Webb*, 406 F.2d 1275, 1279-80 (9th Cir. 1969). Thus, for example, in *Webb*, the Ninth Circuit held that a title company acting as trustee for some of defendants' property was properly named as a defendant even though the plaintiff did not assert any claim against the title company. It was enough that the title company had been joined "for the sole purpose of 'facilitating' the enforcement of any orders that might be made by the court with respect to the trust or the trust property." *Id.*

Similarly, in *National Wildlife Federation v. Espy*, 45 F.3d 1337, 1344-45 (9th Cir.1995), the Ninth Circuit held that private parties could be named as defendants, along with federal agencies, in a suit brought under the APA in order to ensure that complete relief could be granted. This was true even though the underlying federal statutes did not authorize causes of action against the private parties. *Id.* at 1344. The Ninth Circuit explained that complete relief was not available unless the private parties were prevented from harming the wetlands on their property and, further, the absence of the private parties would impair their

ability to defend their interest in the property. *Id.* Thus, joinder of the private

parties was proper under Rule 19 even though no direct claims were brought

against them. *Id.*; *see Int'l Brotherhood of Teamsters v. United States*, 431 U.S.

324, 356 n.43 (1977) (although the plaintiff had no viable cause of action against

the defendant union, "[t]he union will properly remain in this litigation as a

defendant so that full relief may be awarded the victims of the employer's

discrimination")(citing Fed. R. Civ. P. 19(a)).

Here, although the Complaint does not allege a substantive claim against

Hoff, it does seek relief against him, including an order directing Hoff to withdraw

the September 29, 2020, application for coverage of the Project under NWP 14;

and a preliminary and permanent injunction that precludes Defendants—including

Hoff—from implementing the Project until compliance with the CWA is achieved.

(Dkt. 1 at 8.) Thus, based on the allegations in the Complaint, Hoff is properly

joined as a defendant because his presence in this action is necessary for Paradise

to obtain complete relief. *See NWF*, 45 F.3d at 1344-45; *Peabody W. Coal Co.*, 400

F.3d at 781; *Webb*, 406 F.2d at 1279-80.

It also appears that Hoff is properly joined because his absence would impair

his ability to defend his interest in having the Project proceed. Hoff argues,

however, that he has no interest in the Project and that he "could retire tomorrow

and the [NWO 14] permit would still allow construction to begin without" him

being involved. Hoff's argument overlooks the fact that he is named as a defendant

in his *official capacity* (and not in his personal capacity), and that he is named as

the official who signed the NWP 14 application and is responsible for ensuring

ITD complies with the CWA. In his official capacity, he does have an interest in

the Project and is also a necessary party to obtain the complete relief sought by

Paradise. Further, if Hoff were to retire, his successor would be automatically

substituted in his place. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when

a public officer who is a party in an official capacity dies, resigns, or otherwise

ceases to hold office while the action is pending. The officer's successor is

automatically substituted as a party.").

Nonetheless, even if Hoff did not, in his official capacity, have an interest in

the Project proceeding, his presence in this action is necessary for Paradise to

obtain complete relief. He is therefore properly joined as a defendant. The Motion

to Dismiss will accordingly be denied.

## MOTION TO COMPEL

Paradise seeks an order compelling Defendants to allow Paradise's

consultants to conduct a wetland delineation on the state-owned public land and

public right-of-way at Site 1 of the Project.[4] Paradise plans to use the data obtained through the requested discovery to create a 2022 Wetlands Report to submit in support of a motion to supplement the AR. Defendants oppose the motion.

## A.   Legal Standard

Judicial review under the APA is limited to the administrative record. 5 U.S.C. § 706 (directing the court to "review the whole record or those parts of it cited by a party"); *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) ("The task of the reviewing court is to apply the appropriate APA standard of review . . . to the agency decision based on the record the agency presents to the reviewing court."). Further, the scope of review is generally limited to "the administrative record in existence at the time of the [agency] decision and [not some new] record that is made initially in the reviewing court." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (citation omitted).

There are, however, four narrow exceptions under which the administrative record prepared by the agency may be supplemented by extra-record materials: (1)

---

[4] Paradise previously served a discovery request on Defendants requesting entry onto the state land for the purpose of conducting a wetland delineation at Site 1, but Defendants denied the request. The parties conferred repeatedly, without reaching a resolution, then contacted Court personnel for an informal discovery dispute mediation. That mediation was held on April 28, 2022, and the dispute remained unresolved. Accordingly, Paradise was granted leave to file a motion to compel discovery and an expedited briefing schedule was set due to the time sensitive nature of the request to conduct a wetlands delineation. (*See* Dkt. 14.)

when "necessary to determine 'whether the agency has considered all relevant factors and has explained its decision' "; (2) "when the agency has relied on documents not in the record"; (3) "when supplementing the records is necessary to explain technical terms or complex subject matter"; or (4) "when plaintiffs make a showing of agency bad faith." *Southwest Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (citation omitted).

These four exceptions are "limited" and "operate to identify and plug holes in the administrative record." *Lands Council*, 395 F.3d at 1030. The scope of these exceptions "is constrained, so that the exception does not undermine the general rule." *Id*.

"The administrative record submitted by the government is entitled to a presumption of completeness which may be rebutted by clear evidence to the contrary." *In re United States,* 875 F.3d 1200, 1206 (9th Cir.), *judgment vacated on other grounds*, 138 S. Ct. 443 (2017); *see WildEarth Guardians v. Salazar*, No. CV 08-508-EJL-LMB, 2010 WL 11565133, at *3 (D. Idaho Mar. 9, 2010) ("When a court is presented with a motion to augment, or 'complete,' the record with documents found in FWS's files, the agency's certification is entitled to a strong presumption of regularity."); *see also Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021) ("But like other official agency actions, an agency's statement of what

is in the record is subject to a presumption of regularity," and courts "must

therefore presume that an agency properly designated the Administrative Record

absent clear evidence to the contrary." (internal quotation marks and citation

omitted)). The party seeking to supplement the record bears the burden of

overcoming the presumption of regularity by clear evidence. *See United States v.*

*Chemical Found.*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity

supports the official acts of public officers, and, in the absence of clear evidence to

the contrary, courts presume that they have properly discharged their official

duties.") (citations omitted); *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th

Cir. 1993); *WildEarth Guardians v. Salazar*, No. CV 08-508-EJL-LMB, 2010 WL

11565133, at *3 (D. Idaho Mar. 9, 2010) (granting motion to supplement where

plaintiffs demonstrated that the agency failed to include documents cited in

agency's substantive finding); *Glasser v. Nat'l Marine Fisheries Service*, No. C06-

0561BHS, 2008 WL 114913 (W.D. Wash. Jan. 10, 2008) (rejecting request to

supplement record where plaintiff failed to "present clear evidence sufficient to

overcome the presumption of administrative regularity that is afforded to the

designation and certification of the administrative record"); *Jones v. Rose*, No. CV-

00-1795-BR, 2005 WL 2218134, *7 (D. Or. Sept. 9, 2005) (declining to

supplement record where presumption of regularity not overcome).

**B.     Discussion**

At the heart of this case is the 0.5 acre threshold of NWP 14. And, at the

heart of the requested discovery is whether the anticipated supplementation of the

record is necessary to allow the Court to evaluate whether the Corps adequately

considered all relevant factors and adequately explained its decision that the

Project did not exceed the 0.5 acre threshold. *See Lands Council*, 395 F.3d at 1030

("Supplementation of the record proves necessary [to] allow the Court to evaluate

properly whether the Corps adequately 'considered all relevant factors' and

properly 'explained its decision.' ") (citation omitted).

Paradise contends that, to demonstrate that the Corps failed to consider all

relevant factors and failed to adequately explain its decision, it needs authorization

to enter onto State of Idaho public land at one particular site of the Project—Site

1—so that its expert consultants can conduct a wetland delineation. Paradise

explains that Site 1 is the southernmost wetland impact site for the Project and

consists of an amalgamation of several wetlands and a segment of Thorn Creek, all

of which are treated as a single unit for purposes of assessing whether the 0.5 acre

threshold is exceeded. Paradise seeks this limited discovery to gather data for the

purpose of determining the existence and size of wetlands at Site 1. Paradise will in

turn seek to supplement the record with that data and an expert report based on that

data. Paradise believes that the supplemental information will demonstrate that the

Corps did not consider all relevant information in determining that the Project meets the 0.5 acre threshold and did not adequately explain its decision. Paradise further explains that the extra-record evidence it seeks to obtain will be destroyed if Paradise is not permitted to collect the evidence and that time is of the essence in gathering the evidence. Finally, Paradise represents that if its consultants determine the Project meets the 0.5 acre threshold at Site 1, it will voluntarily dismiss the Complaint.

Paradise raises several arguments in support of the motion to compel discovery. The Court will address each in turn.

1. **Whether the case involves a challenge to the Corps' failure to act.**

Paradise first argues that this is a situation in which the Corps has failed to act and thus review is not limited to the AR. Specifically, Paradise argues that the Corps' failure to instruct Hoff to apply for individual permits for the Project is a discrete agency action that it was required to take, and that review is therefore not limited to the AR.

A suit can be brought under the APA to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Such a suit "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Oregon Nat. Desert Ass'n, v. Bureau of Land Mgmt.*,

625 F.3d 1092, 1118 (9th Cir. 2010) (emphasis in original) (citation and internal

quotation marks omitted).

 For example, in *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560

(9th Cir. 2000), the Ninth Circuit held that a challenge to the failure to prepare a

supplemental Environmental Impact Statement is a challenge to an agency's failure

to act and that, as a result, there is no final agency action. 222 F.3d at 560. Under

these circumstances, review is not limited to the administrative record "because

there is no final agency action to demarcate the limits of the record." *Id.*

 In contrast, if, for example, a court determines that an environmental impact

statement (EIS) is inadequate, and directs the agency to redo it, the court is

"reviewing the validity of the final agency action that *was* taken, not . . .

demanding that the agency take some action that it has *not* taken." , as the Ninth

Circuit explained in *Oregon Nat. Desert Ass'n.*, 625 F.3d at 1119. Under those

circumstances, the challenge is thus *not* to an agency's failure to act. *See id.*

 Here, there is final agency action—the Corps' issuance of the verification

letter that the Project can proceed under NWP 14 based on the Corps'

determination that no more than 0.5 acres of wetlands will be lost at Site 1. The

fact that this means that the Corps also did not require ITD to apply for individual

CWA permits does not transform the case into a challenge to an agency's failure to

act.

Paradise's reliance on 33 C.F.R. § 330.1(d) in support of its argument is misplaced. That regulation specifically provides that "[d]istrict and division engineers have been delegated a *discretionary* authority to suspend, modify, or revoke authorizations under an NWP"; and "*discretionary* authority to review any activity authorized by NWP to determine whether the activity complies with the NWP." *Id.* (emphasis added). Thus, this portion of the regulation provides discretionary authority to take action; it does not *require* the agency to take action.

The Court acknowledges that this same regulation includes a mandatory provision. *See id.* ("The terms and conditions of certain NWPs require the DE to review the proposed activity before the NWP authorizes its construction. . . . If the DE finds that the proposed activity would have more than minimal individual or cumulative net adverse effects on the environment or otherwise may be contrary to the public interest, he shall modify the NWP authorization to reduce or eliminate those adverse effects, or he shall instruct the prospective permittee to apply for a regional general permit or an individual permit.") However, this provision becomes mandatory only if the specified findings have been made. *See id.* Here, Paradise has not cited to anything in the AR indicating that the requisite findings have been made and thus that this mandatory provision has been triggered.

Paradise has not demonstrated that this is a case where the Corps failed to take a *discrete* agency action that it is *required to take*. Accordingly, review in this case is limited to the AR.

> 2. **Whether Paradise has adequately shown matters the agency should have considered but did not.**

Paradise argues that, if the requested discovery confirms that the 0.5 acre threshold is exceeded, supplementation of the AR with the data obtained and the expert report that would be prepared, would be appropriate for the purpose of allowing the Court to determine whether the agency considered all relevant factors and has adequately explained its decision in issuing the verification.[5]

Paradise explains that there is good reason to believe that the Hoff application omitted a covered wetland and inaccurately delineated other wetlands at Site 1, and that the Corps missed those omissions and errors when it approved the application and issued the verification. Paradise seeks, through its requested discovery, to obtain information needed for its experts to prepare a "2022 Wetland Report" to "fill in data gaps" in the AR, and correct the purported omissions and

---

[5] Paradise also argues that the supplementation is necessary to explain technical terms or complex subject matter. Because the Court finds that supplementation is necessary to determine whether the agency considered all relevant factors and adequately explained its decision, the Court does not address this alternative ground for allowing discovery and potential supplementation.

inaccurate wetlands delineation in the Hoff application. In support, Paradise cites to the declaration of Dr. Kleindl.

In his declaration, Dr. Kleindl explains that he reviewed the wetland reports, wetland delineations, and wetland datasheets supporting the Hoff application. (Dkt. 17-2.) He notes numerous problems with the data underlying the Hoff application's representation that the Project's impact on wetlands at Site 1 will be less than 0.5 acre. (*Id.*) For example, he explains that the use of the Garmin Montana GPS device to calculate the acreage of wetlands at Site 1 is not very precise, and has accuracies of only about eight feet. (Dkt. 17-2.) He explains that this is particularly concerning given the slight difference between the acreage calculated using that device (0.468 acre) and the 0.5 acre threshold—a difference of only 0.032 acres. He opines that due to the use of the Garmin Montana device, the Corps lacked adequate precise information to determine whether the 0.5 acre threshold was exceeded.

As another example, Dr. Kleindl notes that there are three parameters that must exist for a site to be considered a wetland covered under the CWA, and that the Hoff application acknowledges that two of these parameters—hydrophytic vegetation and hydric soils—are present at one of the test sites (site B12) but concluded that the third parameter—wetland hydrology—was not present and that

the site B12 was thus not a covered wetland. He explains, however, that

information in the AR indicates that this third parameter is present at the B12 test

site and that the test site should thus be considered a covered wetland. (Dkt. 17-2 at

6-7.) Yet, there was no wetland delineated in the location of the B12 test site, and

the AR does not explain this discrepancy. Dr. Kleindl opines that "it appears highly

likely that there are unmapped wetlands" at Site 1 and that a wetlands area that will

be impacted was omitted from the wetlands area calculation. (Dkt. 17-2 at 8.)

Defendants respond that the AR is extensive and that Dr. Kleindl did not

adequately review and/or engage the AR in his declarations. However, Defendants

do not directly respond to the two examples cited above that are included in Dr.

Kleindl's declaration.

As to the use of the Garmin Montana GPS device, Defendants do not

contradict Dr. Kleindl's assertion that the use of this device is imprecise.[6] Nor do

Defendants cite to any portion of the AR where this impreciseness was considered

in the AR. The impreciseness of the device appears to be a particularly relevant

factor to consider here given the slight difference between the measured acreage of

_____

[6] Dr. Kleindl did note that there was a 565 foot discrepancy that *may have* resulted from
the use of this device but, as Defendants point out, that discrepancy was based on a transcription
error and that the correct data was ultimately used.

**MEMORANDUM DECISION AND ORDER - 19**

0.468 and the 0.5 acre threshold—a difference of only 0.032 acre.

As to the examination of wetland hydrology at test site B12, again, Defendants do not directly address Dr. Kleindl's assertion that information in the AR indicates that wetland hydrology is present at the B12 test site and that the test site should thus be considered a covered wetland site. Hoff's response explains that B12 is located within the W28 area, and asserts that the focus on B12 is "a red herring" because it diverts attention away from the Corps' broader focus on whether W28 exhibits wetland characteristics and should be delineated. (Dkt. 18 at 7.) Similarly, the Corps indicates that there was a determination made by ITD's consultant that the W28 area should not be considered a wetland site. The Court is not convinced that this broader focus on W28 area explains or takes away from Dr. Kleindl's position that test site B12 should be considered a wetland site. Further, Defendants have not cited to anything in the AR indicating that consideration was given to  whether site B12 is a wetland or of secondary hydrology factors at site B12.

If the data gathered in the requested discovery, and the anticipated expert report based on that data, documents the existence of wetlands that were not included in the verification decision due to, for example, the failure to consider secondary hydrology indicators at the B12 site, or the failure to consider the impact

of the use of an imprecise method of measurement (e.g., the use of the Garmin Montana GPS device), that extra-record information would be admissible as evidence that the Corps failed to consider all relevant factors and failed to adequately explain its decision. *See Lands Council*, 395 F.3d at 1030. Accordingly, the Court finds that the limited discovery requested in the motion to compel is warranted and will grant the motion.

### C.    Burden on ITD

Finally, Hoff argues that Paradise's requested discovery would place an undue burden on ITD because it will result in multiple people on both sides of U.S. Highway 95, at a location very close to where the existing highway narrows from four lanes to two lanes, and which may be near a construction site. "Provision will have to be made for parking vehicles, crossing traffic lanes, safety attire, and perhaps protective flagging."[7] Paradise responds that it is confident that the requested wetlands delineation can be conducted safely.

Although the Court appreciates the safety concerns put forth by Hoff, the Court does not find those safety concerns to be insurmountable or a sufficient basis

---

[7] Hoff also argues that the discovery will impose burdens relating to an active construction contract for the work, that is occurring now; the need for ITD consultants to respond to the proposed report; and the need for ITD environmental personnel to revisit the site and spend additional time on a delayed addition to the AR.

for denying the motion to compel.

### D.    The Corp's motion to file sur-reply

The Corps moves to file a sur-reply in opposition to Paradise's motion to compel. In support of its motion, the Corps first contends that Paradise argued for the first time in its reply brief that the Corps site investigation failed to look at Test Site B12  and thus failed to consider a relevant factor. The Court disagrees and finds that Paradise sufficiently raised the issue in its opening brief. (*See, e.g.,* Dkt. 17 at 3 ("The part of Site 1 at issue (known as Test Site B12) appears to have two secondary hydrology indicators, in which case the site would qualify as having wetland hydrology and would meet all three parameters needed to qualify as a jurisdictional wetland."); *id.* at 16 ("For instance, with regard to the B12 test site, ITD ruled it out because of an absence of wetland hydrology. Yet the Corps appears to have ruled out a wetland in that area because of an absence of hydric soils. *But the Corp's test site was at a different location*. It does not demonstrate that the soils are not hydric at the site studied by ITD." (emphasis added)).

The Corps also contends that Paradise argued for the first time in its reply brief that the Garmin Montana device could not provide the level of accuracy required in this setting, and essentially provided ITD and the Corps with bad data. Again, the Court disagrees and finds that Paradise sufficiently raised this argument in its opening brief. (*See, e.g.,* Dkt. 17 at 5 ("Because ITD previously indicated that

a wetland exists on the east side of US-95 at Site 1 and would be impacted, and

now asserts there is no wetland there and that wetland impacts on the west side of

the highway fall short by just 0.032 acres, it is important that the acknowledged

wetland impact areas are measured precisely . . . . But the two wetland reports

supporting Hoff's application generated measurements utilizing a relatively

imprecise measuring tool, a 'hand-held GPS (Garmin Montana)'"); *id.* at 5 ("A

Garmin Montana is accurate to approximately eight feet. Much more accurate GPS

positioning devices (accurate within a meter) exist and are used in the field by

wetland professionals."); *id.* at 6 ("A precise delineation of the impacted wetlands

at Site 1 must be undertaken now, before the wetlands are destroyed."); *id.* at 5

("Using the relatively imprecise Garmin Montana created a data gap regarding the

true size of the impacted wetlands. The Corps failed to explain its basis for relying

on such an imprecise tool in this context. . . ."); *id.* at 12-13 (the AR "fails to

provide sufficiently precise measurements of the admittedly impacted wetland

areas on the west side"); *id.* at 14 ("The Corps failed to consider whether ITD's

reliance on the imprecise Garmin Montana GPS tool caused it to understate the

size of the wetland on the west side of the highway."); *id.* at 15 ("Plaintiff will be

asking the Court to find that the Corps . . . failed to consider the inaccuracy of the

Garmin Montana device used to mark the boundaries of the wetlands on the west

side of US-95 at Site 1.").

Finally, the Corps seeks to file a sur-reply on the ground that Paradise submitted two new declarations with its reply brief to which the Corps did not have an opportunity to respond. The Court finds it unnecessary to rely on those additional declarations in deciding the motion to compel and, accordingly, there is no need for the Corps to file a sur-reply to respond to those declarations.

For these reasons, the motion to file a sur-reply will be denied.

## ORDER

**IT IS ORDERED that:**

1.      Defendant Hoff's Motion to Dismiss (Dkt. 8) is DENIED.

2.      Plaintiff's Motion to Compel Discovery (Dkt. 17) is GRANTED. Defendants shall allow Plaintiff access to Site 1 at the earliest opportunity, but no later than June 10, 2022, to conduct the requested discovery.

3.      Defendant Corps' Motion to file Sur-Reply (Dkt. 23) is DENIED.

DATED: June 3, 2022

B. Lynn Winmill
U.S. District Court Judge